UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALI KANOUNO BABAE,
Plaintiff,

v.

SERGIO ALBARRAN, et al.,
Defendants.

Case No. 26-cv-11836-WHO

**ORDER GRANTING PRELIMINARY INJUNCTION**

On October 14, 2026, the Hon. Araceli Martínez-Olguín granted a temporary restraining order ordering respondents Sergio Albarran, David J. Venturella, Markwayne Mullin, and Todd W. Blanche (collectively, "the government") to release petitioner Ali Kanouno Babae from custody and enjoining them from re-detaining him absent prior notice and a pre-deprivation hearing. Judge Martínez-Olguín also issued an Order to Show Cause requiring the government to explain why a preliminary injunction should not issue. The government has now responded, arguing that Babae is not likely to succeed on the merits of his claims. By contrast, Babae has shown that he is likely to succeed on his procedural due process claim, that he faces irreparable harm in the absence of injunctive relief, and that both the balance of equities and the public interest weigh in his favor. For the additional reasons set forth below, his request for a preliminary injunction is GRANTED.

**BACKGROUND**

Babae, a 40-year-old national of Libya, entered the United States in 2015 on an F-1 student visa. Petition for Writ of Habeas Corpus ("Pet.") [Dkt. No. 1] ¶ 1; Declaration of Petitioner ("Babae Decl.") [Dkt. No. 3-2] at 2. He has since lived in the United States for more than eleven years, principally in California. *Id.* ¶ 23. In 2017, before his visa expired, he filed an asylum

United States District Court
Northern District of California

application. Babae Decl. at 2. As part of that process, he submitted his biometrics and has been waiting for an asylum interview. *Id.* He also received an Employment Authorization Document ("EAD"), which he has renewed consistently since his initial application. Pet. ¶ 2. His asylum application remains pending. Supplemental Declaration of Ali Kanouno Babae ("Supp. Babae Decl.") [Dkt. No. 11-1] ¶ 3.

On October 13, 2026, Babae appeared for his biometrics appointment to renew his EAD. Babae Decl. at 2; Pet. ¶ 31. Immigration officers arrested him there. Supp. Babae Decl. ¶ 8. He was told that he had a hearing on November 3, 2026, though he did not receive any paperwork about that hearing. *Id.* ¶ 11. Until his release the following day, he was moved between rooms and vans and was not allowed to sleep on a bed. *Id.* ¶ 13.

The same day he was detained, Babae filed a petition for writ of habeas corpus and an ex parte motion for a temporary restraining order. *See generally* Pet.; Mot. [Dkt. No. 3]. Judge Martínez-Olguín, acting in her capacity as a general duty judge, granted the motion for a temporary restraining order on October 14, 2026, and ordered his immediate release from custody. Order Granting Temporary Restraining Order ("TRO Order") [Dkt. No. 4]. The government released Babae in San Francisco that day. Dkt. No. 8. Judge Martínez-Olguín also issued an Order to Show Cause, requiring the government to show why a preliminary injunction should not be issued in favor of Babae. TRO Order at 5. The government submitted its response to the Order to Show Cause on October 19, 2026. Oppo [Dkt. No. 9]. Babae replied on October 21, 2026. Reply [Dkt. No. 11]. I heard oral argument on October 23, 2026.

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). This has been interpreted as a four-part conjunctive test, not a four-factor balancing test. However, the Ninth Circuit has adopted a sliding scale approach, where a plaintiff may obtain an injunction so long as he has demonstrated "serious questions going to the merits," that the balance of hardships "tips sharply" in his favor, that he is

likely to suffer irreparable harm, and that an injunction is in the public interest. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011).

## DISCUSSION

### I. Likelihood of Success on the Merits

#### A. Procedural Due Process Claim

In his petition, Babae argues that his arrest and detention, without a pre-deprivation hearing, violated procedural due process under the Fifth Amendment. *See* Pet. ¶¶ 34–39. In its brief, the government clarifies that Babae was detained pursuant to 8 U.S.C. § 1226(a). The government contends that Babae has not identified any due process violation supporting his procedural due process claim because he lacks a constitutionally protected liberty interest and because section 1226[1] requires only a post-detention, not a pre-deprivation, hearing. *See* Oppo. at 8–9.

The government's assertion that Babae lacks a protected liberty interest cannot be squared with the facts or the case law. To the contrary, when the government decides not to detain someone in the first place, that decision can create the same liberty interest in that person's continued freedom as an individual initially detained. *Chaparro Ayala v. Albarran*, No. 26-CV-09430-CRB, 2026 WL 2722780, at *3 (N.D. Cal. Sept. 15, 2025). Courts throughout the Ninth Circuit have repeatedly held, on facts materially similar to these, "that a noncitizen who has lived at liberty for an extended duration while his immigration case proceeds—pursuant to the Government's affirmative decision not to detain him—holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process." *Avalo Jimenez v. Chestnut*, No. 26-CV-04128, 2026 WL 2323047, at *3 (E.D. Cal. Aug. 11, 2026) (collecting cases).

In *Kharitonova v. Albarran*, No. 26-CV-01362-JSC, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026), the court held that the government's decision not to detain the petitioner when it processed

---

[1] It was initially unclear to Babae which statutory authority the government was invoking to detain him, Mot. at 10, but the government clarified in its brief that it detained Babae pursuant to 8 U.S.C. § 1226(a).

her asylum application, took her biometrics, referred her asylum case to the Executive Office for Immigration Review, and advised her to appear for multiple hearings, gave rise to a "liberty interest in remaining free from detention as she has lived for the last 13 years." *Id.* at *2. The court explained that "[a]lthough the government did not detain and then release her, it made a decision *not* to detain her in the first place[.]" *Id.* Likewise, in *Avalo Jimenez v. Chestnut*, No. 26-CV-04128, 2026 WL 2323047 (E.D. Cal. Aug. 11, 2026), the petitioner entered on a visa, applied for asylum and received work authorization, and was not detained after he overstayed his visa or after he was granted work authorization. *Id.* at *1. The court held that "[b]y acquiescing to his continued presence in the United States," even after the petitioner continued to engage in the immigration process via his asylum claim and work authorization, "the Government vested in Petitioner a liberty interest in his continued freedom." *Id.* at *3.

The same circumstances are present here. Babae entered the United States on a visa, applied for asylum before his visa expired, and received work authorization, "such that the government was not only aware of but *approved of* [his] initial presence in the country." *Oliveira Tinoco v. Albarran*, No. 26-CV-05505, 2026 WL 2949219, at *5 (E.D. Cal. Oct. 1, 2026). The cases the government relies upon do not foreclose such a finding. *Carreno Ortiz v. Albarran*, No. 26-CV-08708-WHO (N.D. Cal. Aug. 28, 2026) involved a much sparser factual record. The petitioner did not provide any facts indicating that she had any contact with immigration authorities prior to her arrest that might have indicated a decision on the government's part not to detain her. Minute Order, *Carreno Ortiz*, ECF No. 10 at 4. Nor were there any facts showing that she had formed "attachments of normal life" from residing in the United States that would create a liberty interest. *See Chaparro Ayala*, 2026 WL 2722780, at *3–4 (explaining that a person may have a liberty interest, even absent contact with the government, based on the length of the person's residency and that person's work history and community ties). But unlike the petitioner in that case and the petitioner in *Nemiro v. Albarran*, No. 26-CV-07853-JD (N.D. Cal. Aug. 6, 2026), Babae did not "simply overstay[] his [] visa." Order, *Nemiro*, ECF No. 9. Rather, he lived at liberty in the United States for over a decade, and the government decided *not* to detain him after the expiration of his visa, instead granting him work authorization while his asylum claim

proceeded. Finally, the court in *Njonjo v. Albarran*, No. 26-CV-02188-JST, 2026 WL 716771 (N.D. Cal. Mar. 13, 2026), did not address whether the petitioner had a protectable liberty interest, as the petitioner appeared to only argue that the procedures afforded by section 1226 were inadequate. *See id.* at *2–3. Accordingly, Babae has a protected liberty interest.

To determine what procedures are constitutionally sufficient to protect Babae's liberty interest, I apply the three-part test set forth by the Supreme Court in *Mathews v. Eldridge* and consider (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. 424 U.S. 319 (1976). As discussed above, Babae has a liberty interest. Such interest in freedom from physical detention is weighty. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

The risk of erroneous deprivation from detaining an asylum applicant without any prior opportunity to be heard is substantial, and the value of a pre-deprivation hearing in reducing that risk is correspondingly high. *See Gagik T. v. Chestnut*, No. 26-CV-04337, 2026 WL 1837413, at *4 (E.D. Cal. June 25, 2026). The government resists this conclusion by invoking *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), which held that the post-deprivation bond procedures of section 1226(a) facially satisfy due process. *Id.* at 1213. But *Rodriguez Diaz* did "not foreclose all as-applied challenges to [section] 1226(a)'s procedures" and is factually distinct from the instant case. *Id.* There, the Ninth Circuit considered whether a petitioner already in custody was entitled to a second bond hearing, at which the government would bear the burden of proof by clear and convincing evidence, after the petitioner had already requested and received a bond hearing and was denied bond. *Id.* at 1193–94, 1203. The Ninth Circuit "did not consider whether the Government may seize a person after years of government-sanctioned liberty without affording any prior process." *Gagik T.*, 2026 WL 1837413, at *3; *see also Chaparro Ayala*, 2026 WL 2722780, at *5 (rejecting the government's reliance on *Rodriguez Diaz* and collecting cases where courts found pre-deprivation hearings necessary).

Finally, though the government has a strong interest in enforcing immigration laws, *Rodriguez Diaz*, 53 F.4th at 1208, its interest in doing so by detaining Babae without pre-deprivation procedural protections is low. *Oliveira Tinoco*, 2026 WL 2942919, at *6; *see also*

United States District Court
Northern District of California

*Chaparro Ayala*, 2026 WL 2722780, at *6 (noting that a generalized interest in enforcing immigration laws is not threatened by requiring a pre-deprivation hearing). Moreover, such hearings are routine and impose a minimal cost. *Chaparro Ayala*, 2026 WL 2722780, at *6.

The *Mathews* factors weigh in Babae's favor, and he has shown a likelihood of success on the merits of his procedural due process claim.[2]

**B. Exhaustion**

The government also contends that I should require Babae to exhaust his administrative remedies before seeking habeas relief in a federal district court. *See* Oppo. at 11–13. Before a district court reaches the merits of a habeas petition challenging immigration detention, it ordinarily considers whether the petitioner has exhausted available administrative remedies. *See Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds*, *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Prudential exhaustion may be required where "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). Courts may nonetheless waive exhaustion if the petitioner shows that "administrative remedies are inadequate or not efficacious," "pursuit of administrative remedies would be a futile gesture," "irreparable injury would result," or "the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

As an initial matter, agency expertise is not necessary to reach a proper decision here. Babae claims that the due process violation occurred when ICE detained him without notice or a pre-deprivation hearing. *See* Pet. ¶ 37. That sort of constitutional challenge is beyond the competence of the agency to decide. *Avalo Jimenez*, 2026 WL 2323047, at *2. And requiring exhaustion would be futile for the same reason. *Chaparro Ayala*, 2026 WL 2722780, at *7 n.5 ("Further, where a petitioner's claims 'concern the constitutionality of an agency action prior to

---

[2] Because Babae has shown a likelihood of success on the merits of his procedural due process claim, I need not reach his other claims at this time.

the bond hearing,' they fall beyond the jurisdiction of the Board of Immigration Appeals and 'requiring administrative exhaustion would be futile.'"). Therefore, I waive the exhaustion requirement.

**II. Irreparable Harm**

Babae has also demonstrated a likelihood of irreparable injury in the absence of preliminary relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017). The harm is especially acute for Babae, who has a serious medical condition that could be fatal if left untreated. Dkt. No. 3-3 at 2. Detention would only amplify the risk of such harm given the "subpar medical . . . care in ICE detention facilities," *Hernandez*, 872 F.3d at 995, and the possibility that detention may delay his upcoming surgery to treat his condition. Supp. Babae Decl. ¶ 16.

**III. Public Interest and Balance of Equities**

In cases where the federal government is the opposing party, the balance of the equities and public interest factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are "staggering." *Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2006) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). The government asserts that there is a "significant" public interest in requiring Babae to utilize the procedures established by the section 1226(a) framework "rather than creating additional, burdensome processes." Oppo. at 15. But "[f]aced with a conflict between administrative concerns and preventable human suffering," I have "little difficulty concluding that the balance of hardships tips decidedly in [Babae's] favor." *Chaparro Ayala*, 2026 WL 2722780, at *7 (cleaned up).

**CONCLUSION**

For the foregoing reasons, I GRANT Babae's request for a preliminary injunction. The



United States District Court
Northern District of California

United States District Court
Northern District of California

government is ENJOINED from detaining Babae without notice and a pre-detention hearing during which a neutral decisionmaker must consider whether he is either a danger to the community or flight risk such that his physical custody is required. The government is further ENJOINED from removing Babae from this judicial district during the pendency of these habeas proceedings. This Order shall remain in effect until further order of the Court. The government does not request, and I decline to require, security.

Additionally, the government is ORDERED TO SHOW CAUSE why I should not enter final judgment on the merits of Babae's habeas petition. The government shall file responsive papers within seven (7) days of this Order. Babae may file a reply within 14 days of this Order. The matter is not set for a hearing, though I may set one should I later determine that a hearing is necessary.

**IT IS SO ORDERED.**

Dated: October 26, 2026

William H. Orrick
United States District Judge